UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VANESSA L. COLON,

                    Plaintiff,

-vs-                                                    Case No. 6:07-CV-942-ORL-18KRS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

        This cause came on for consideration without oral argument on the Complaint

filed by Vanessa L. Colon, seeking review of the final decision of the Commissioner of

Social Security denying her claim for social security benefits.  Doc. No. 1.  The

Commissioner answered the Complaint and filed a certified copy of the record before the

Social Security Administration (SSA).  Doc. Nos. 10, 11.  The matter has been referred

to me for issuance of a Report and Recommendation.

**I.       PROCEDURAL  HISTORY.**

        Colon applied for disability benefits under the Federal Old Age, Survivors and

Disability Insurance Programs (OASDI), 42 U.S.C. § 401 *et seq*., and under the

Supplemental Security Income for the Aged, Blind and Disabled Program (SSI), 42

U.S.C. § 1381, *et seq*. (sometimes referred to herein as the Act).  R.  49-51, 247-49.

She alleged that she became disabled on April 2, 2004.  R. 49, 247.  Colon's

applications were denied initially and on reconsideration. R. 28-38.

Colon requested a hearing before an administrative law judge (ALJ).  R. 39.  An

ALJ held a hearing on June 21, 2006.  Colon, represented by an attorney, testified at the

hearing. R. 262-78.

After considering the testimony and the medical evidence presented, the ALJ

found that Colon had not engaged in substantial gainful activity since the alleged onset

date of her disability.  R. 18.  The ALJ concluded that the medical evidence showed that

Colon had fibromyalgia, depression and left trochanteric bursitis, which were severe

impairments.  These impairments did not meet or equal any of the impairments listed in

the applicable social security regulations (the Listings), including Listings 12.04 and

12.08.[1]  R. 18.

The ALJ found that Colon had the residual functional capacity (RFC) to perform at

least light exertional work.  Specifically, she could lift/carry 20 pounds occasionally, and

10 pounds frequently, and sit, stand or walk for about 6 hours in an 8-hour workday.

R. 18-19.  The ALJ further concluded that the severity of Colon's impairments did not last

for a continuous period of at least 12 months.  R. 19.

---

[1]  The Code of Federal Regulations "contains a Listing of Impairments specifying almost every sort of medical problem ('impairment') from which a person can suffer, sorted into general categories."  *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004); 20 C.F.R. Part 404, Subpt. P, App. 1.

In reaching this RFC assessment, the ALJ found that Colon's impairments could reasonably be expected to produce the alleged symptoms, but that Colon's testimony about the intensity, duration and limiting effect of the symptoms was not entirely credible. R. 19.  The ALJ found that the medical records did not show that Colon had markedly diminished range of motion or muscle atrophy.  R. 20.  The ALJ relied on the RFC assessment by the physicians who reviewed Colon's records to conclude that she could perform work at the light level of exertion, as required by her previous job as a cashier. R. 20.

With respect to her mental impairment, the ALJ appeared to credit the reviewing physicians' conclusion that Colon would have mild to moderate medical functional limitations.  R. 20.  However, because the ALJ determined that Colon's mental conditions were responsive and amenable to conservative medical treatment and medications, he apparently concluded that her mental impairment did not result in any functional limitations.  R. 20-21.

Because Colon's past relevant work as a cashier was within the RFC as determined by the ALJ, the ALJ concluded that Colon could return to her past relevant work.  R. 21.  Therefore, the ALJ found that Colon was not disabled.  R. 21.

Colon requested review of the ALJ's decision. R. 12.  On May 30, 2007, the Appeals Council issued a decision finding no basis to review the ALJ's decision.  R. 6-8. Colon timely sought review of this decision by this Court.  Doc. No. 1.

**II.      JURISDICTION.**

As Colon has exhausted her administrative remedies, the Court has jurisdiction pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

**III.     STATEMENT OF FACTS.**

After a review of the complete record before the Court, I find that the facts are adequately stated in the ALJ's decision and the parties' memoranda.  Therefore, I will only summarize pertinent facts to protect Colon's privacy as much as possible.

Colon was 28 years old on the alleged onset date of her disability.  R. 264.  She attended school through two years of college.  R.  266.

She previously worked as a cashier, a technician in a photo lab, in security, and as a dishwasher and culinary assistant.  R. 270-71.  In the cashier job, she lifted up to 50 pounds occasionally, and 25 pounds frequently.  She walked about 3 hours, stood about 4 hours, knelt about 1 hour and crawled about 3 hours a day.  She did not have to crouch, stoop or climb.  R. 75.

Colon stopped working in April 2004 due to pain in her knees, arms, neck and back. R.  267.  She testified that her condition had worsened since that date.  R. 267.

Colon estimated that she could sit 15 to 20 minutes at a time with the ability to change positions to relieve pain in her lower back.  R. 267.  She estimated that she could stand 15 to 20 minutes, and walk 5 to 10 minutes due to pain in her knees.  R. 268.  She could not lift a gallon of milk.  R.  268.  Medication did not relieve the pain.  R. 269.

She was depressed, with crying and lack of concentration.  R. 269.  She had difficulty sleeping at night, so she often slept during the day after taking medication that made her drowsy.  R. 272-74.  Medication did not relieve the depression.  R. 269, 272.

Gustavo A. Camargo, M.D., began treating Colon in October 2003.  R. 127.  On March 10, 2004, Colon reported pain in multiple areas with frequent headaches. Dr. Camargo's assessment was fibromyalgia, and he prescribed medication.  R. 126. Colon reported later that month that Naproxsyn did not help relieve her pain, but that another medication helped her to sleep.  R. 125.

On April 6, 2004, Dr. Camargo again examined Colon.  At that time, Colon continued to have headaches, multiple joint and muscle pain and was very stressed.  Dr. Camargo diagnosed her with acute depression with panic, and prescribed Paxil.  R. 124. On April 13, 2004, Colon reported feeling better but still having headaches and being unable to hold things with her hands.  R. 123.  She continued to report pain all over as of April 22, 2004.  R. 122.

Colon was treated at Orlando Behavioral Healthcare from June 2004 through April 2006.  R 131-49, 232-46.  In August 2004, she reported feeling better but she was still having problems with concentration.  R. 140.  In October 2004, the treating professional noted that Colon's condition had significantly worsened.  R. 138.  She had improved again as of November 2004 through March 2005.  R. 133-37.  However, in April 2005, she was again tearful and depressed.  R. 131.  Her condition remained largely the same through April 2006, fluctuating between improvement and worsening of her symptoms. R. 232-46.

Roberto E. Pancorbo, M.D., a rheumatologist, examined Colon in July 2004. R. 154-55.  Colon continued to complain of pain throughout her body, but mainly in her hands, feet, knees and back.  She also occasionally had numbness and stiffness in her hands and feet.  She had headaches, and did not sleep well at night.  R. 154.  Upon examination, Dr. Pancorbo noted mild to moderate tenderness to palpation in some joints, but no reduced range of motion. She walked without difficulty and had no muscle atrophy.  Tender points indicative of fibromyalgia were present in 14 of 18 typical areas. Dr. Pancorbo's assessment was polyarthritis and fibromyalgia syndrome.  He prescribed Flexeril, a muscle relaxant.  He stressed relaxation and aerobic activity to try to improve her symptoms.  R. 155.

On October 20, 2004, Colon reported no relief with Flexeril.  Dr. Pancorbo prescribed a Medrol Dosepak to help relieve the pain, and prescribed Skelaxin rather than Flexeril, because Flexeril made Colon sleepy.  Upon examination, Dr. Pancorbo again confirmed that Colon was tender to palpation in the upper and lower extremity joins, specifically the left knee.  R. 152.

In December 2004, Colon reported continued pain with fatigue and stiffness in the morning.  Karamali A. Bandealy, M.D.[2], noted that lab work was unremarkable.  Tender points were still sore to palpation.  Dr. Bandealy increased her prescription for Elavil, and provided a prescription for Desyrel.  Dr. Bandealy again emphasized that exercise would help with her fibromyalgia symptoms.  R. 151.

---

[2] I note that Dr. Pancorbo and Dr. Bandealy worked out of the same office.

In April 2005, Colon told Dr. Bandealy that medication was not relieving her pain. Dr. Bandealy noted that MRIs of Colon's knees were unremarkable.[3]  Tender (trigger) points remained sore to palpation.  Dr. Bandealy continued to treat her with medication. R. 150.

In November 2004, Todd A. Patterson, D.O., prepared an physical RFC assessment based on a review of Colon's records.  He opined that Colon could lift 50 pounds occasionally, and 25 pounds frequently.  She could sit, stand or walk about 6 hours in an 8-hour day.  R. 176.  He found no other functional limitations.  R. 175-82.

In December 2004, Mary Ann Wharry, Psy.D., prepared mental RFC assessments after review of Colon's records.  R. 183-200.  She concluded that Colon had an affective disorder that would result in mild restrictions of activities of daily living and social functioning, and moderate difficulties maintaining concentration, persistence and pace. R. 187, 197.   Specifically, Dr. Wharry opined that Colon would be moderately limited in the ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.  R. 183-84.

In April 2005, Theodore J. Weber, Psy.D., also prepared mental RFC assessments after review of Colon's records.  R. 201-18.  Dr. Weber concurred with Dr. Wharry's RFC assessments.  *Id.*

---

[3] The record contains the results of tests order by Dr. Bandealy. *See* R. 156-74.

On May 2, 2005, Dr. Bandealy observed that Colon had significant paravertebral muscle pain.  He opined that Colon could not squat or walk on her toes or heels due to knee tenderness and fibromyalgia.  R. 219.

In May 2005, Gloria B. Hankins, M.D., prepared a physical RFC assessment after review of Colon's records. She concurred with Dr. Patterson's earlier assessment. R. 220-27.

In July 2005, Colon told Dr. Bandealy that she continued to experience significant pain.  She had not, however, been using the muscle relaxants as prescribed. Dr. Bandealy prescribed Vicodin.  R. 231.  All trigger points were sore to palpation. R. 231.  His assessment was that Colon had fibromyalgia syndrome and polyarthritis of the hand and feet.  R. 231.

In September 2005, Colon told Dr. Bandealy that she had stopped all medication except Vicodin because it was not giving her relief.  Dr. Bandealy observed that trigger points remained sore to palpation.  He directed Colon to begin an exercise program and prescribed medication.  R. 230.

In December 2005, Colon reported continued pain, although medication was helping her to sleep.  She again had stopped some of her medication because it was not relieving her pain.  Dr. Bandealy noted that trigger points were severely tender to palpation.  He adjusted her medication.  R. 229.

In March 2006, Colon still had pain and trochanteric bursitis.  She again had not been compliant with her medication.   Dr. Bandealy again emphasized that Colon should increase her exercise intensity.  R. 228.

## IV.    STANDARD OF REVIEW.

To be entitled to disability benefits under OASDI or SSI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).  In a case seeking disability benefits under OASDI, the claimant also must show that he or she became disabled before his or her insured status expired in order to be entitled to disability benefits.  42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits.  In sum, an ALJ must apply the following criteria, in sequence:

(1) Is the claimant presently unemployed?

(2) Is the claimant's impairment severe?

(3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?

(4) Is the claimant unable to perform his or her former occupation?

(5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability.  A negative answer leads to a finding of "not disabled."  *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform."  *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210.  "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision."  *Chester v. Bowen*, 792 F.2d

129, 131 (11th Cir. 1986).  Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision.  *Dyer*, 395 F.3d at 1210.  The court may not reweigh the evidence or substitute its own judgment.  *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law.  *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

## V.      ANALYSIS.

All of Colon's assignments of error arise from her contention that the ALJ did not properly consider the functional limitations arising from her fibromyalgia.  Specifically, she argues that the ALJ did not correctly apply the pain standard, did not make explicit

credibility findings, and, consequently, erred in his physical RFC assessment.[4]  These are the only issues I will address.[5]

The ALJ applied the pain and credibility standards used in this circuit. *See Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)(citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). He found that Colon had fibromyalgia, which could have been reasonably expected to produce the symptoms about which she complained.  He concluded, however, that the intensity, duration and limiting effects of that impairment were not as severe as Colon reported.

When an ALJ decides not to credit a claimant's testimony about pain and subjective allegations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir.1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Hale v. Bowman*, 831 F.2d 1007, 1012 (11th Cir.1987).

The reasons articulated by the ALJ for finding Colon's testimony not entirely credible are supported by substantial evidence in the record.  The medical records did

---

[4]  Colon also argues that the ALJ erred in concluding that "the severity of her impairments did not last for a continuous period of at least 12 months."  R. 19.  Because the ALJ completed the first four steps of the sequential analysis, this finding is harmless error.

[5]  The parties were advised that issues not specifically raised would be waived. Doc. No. 12 at 2.

not show diminution in range of motion or muscle atrophy.[6]  Colon was not compliant with medication, as explained most clearly in Dr. Bandealy's treatment records.  Both Dr. Pancorbo and Dr. Bandealy advised Colon that physical activity would help her fibromyalgia symptoms.  None of Colon's treating physicians opined that she could not perform the activities required by the ALJ's RFC finding.

Colon correctly argues that Dr. Bandealy opined that she could not squat due to knee tenderness and fibromyalgia.  Colon's past relevant work as a cashier, as she performed it, did not require crouching/squatting.  R. 75.  Therefore, the ALJ's failure to discuss this limitation is harmless error.

Because the ALJ applied the law of this Circuit, and substantial evidence supports his conclusions, Colon's assignments of error are unavailing.

**VI.   RECOMMENDATION.**

For the reasons set forth herein, I **RECOMMEND** that the decision of the Commissioner be **AFFIRMED.**  I further recommend that the Court direct the Clerk of

---

[6]  Colon argues that the ALJ's reference to these physical findings indicates that he required objective evidence of the existence of fibromyalgia.  To the contrary, the ALJ found that Colon suffered from fibromyalgia and that it was a severe impairment even though there were no laboratory tests or objective indicia of fibromyalgia other than pain and trigger point tenderness.

Court to enter judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within **ten (10) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended  in Orlando, Florida on July 23, 2008.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE